# IN THE
# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NEW YORK

---

## WARDIS AGUILAR-VILLALOBOS
## A#205-521-977
### *Petitioner,*

### - v. -

## DIRECTOR BROPHY, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF BUFFALO  FIELD OFFICE OF U.S IMMIGRATION AND CUSTOMS ENFORCEMENT, DIRECTOR HARVEY, IN HIS OFFICIAL CAPACITY AS OFFICIAL IN CHARGE OF BUFFALLO FEDERAL DETENTION FACILITY.
### *Respondent.*

---

## VERIFIED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

---

## "PRO-SE"

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................,..............i

 TABLE OF AUTHORITIES..............................................................ii/iii

INTRODUCTION.......................................................................1

PARTIES.......................................................................5

JURISDICTION AND VENUE..............................................5

STATUTORY FRAMEWORK..............................................6

STANDARD: A. Writ of Habeas Corpus................................................7

EXHAUSTION OF REMEDIES..............................................8

LEGAL ARGUMENT..........................................................9

CLAIM FOR RELIEF..........................................................22

PRAYER FOR RELIEF AND CONCLUSION......................................23

# TABLE OF AUTHORITIES

**Cases:**

*Demore v. Kim,* 538 U.S. 510, 516-17 (2003);
*Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001).
*Medley v. Decker,* No. 18-CV-7361 (S.D.N.Y. Dec. 11, 2019)
*Singh v. Holder,* 638 F.3d 1196, 1202 (9th Cir. 2011)
*Gutierrez–Chavez v. INS,* 298 F.3d 824, 829 (9th Cir.2002)
*Matos v. Barr,* 509 F.Supp.3d 3, 11 (W.D.N.Y. 2020).
 *Wang v. Ashcroft,* 320 F.3d 130, 140 (2d Cir. 2003)
*Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014)
*Cave v. East Meadow Union Free Sch. Dist.*, 514 F.3d 240, 249 (2nd Cir. 2008)
*Honig v. Doe,* 484 U.S. 305, 327 (1988)
*Foucha v. Louisiana,* 504 U.S. 71, 80 (1992)
*Plyler v. Doe,* 457 U.S. 202, 210 (1982)
*Reno v. Flores,* 507 U.S. 292, 306 (1993)
*Jennings v. Rodriguez,* 583 U.S. 281, 138 S. Ct. 830, 200 L. Ed. 2d 122 (2018)
*Carol William Black v. Thomas Decker,* No.20-3224 (2024).
*Ricardo Rodriques v. Merrick Garland* No. EDCV 23-0216-JPR, (2024)
*Hemans v. Searls,* No. 18-CV-1154, (W.D.N.Y. Feb. 27, 2019)
*Mathews v. Eldridge,* 424 U.S. 319, 335 (1976).
*Hechavarria v. Sessions,* No.15-CV-1058 (LJV), (W.D.N.Y. Nov. 2, 2018)
*Sophia v. Decker,* No. 19 Civ. 9599, (S.D.N.Y. Feb. 14, 2020
*Ranchinskiy v. Barr,* 422 F. Supp. 3d 789, 797 (W.D.N.Y. 2019)
*Bermudez Paiz v. Decker,* No. 18-CV-4759 (S.D.N.Y. Dec. 27, 2018)
*Lett v. Decker,* 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018)
*Gonzales Garcia v. Barr,* No. 6:19-CV-6327-EAW, (W.D.N.Y. Feb. 3, 2020)
*Garcia v. Rosen,* 513 F. Supp. 3d 329 (W.D.N.Y. 2021)
*Velasco Lopez v. Decker,* No. 19-2284-cv (2020)
*Jules v. Garland,* No. 21-CV-6342 CJS, 2021
*Campbell v. Barr,* 387 F. Supp. 3d 286, 300 (W.D.N.Y. 2019)
*Black v. Dir. thomas Decker, 103 F4th 133 92d Cir. 2024)*

**Statutes**

28 U.S.C. § 2241
28 U.S.C. § 1651


# District Court Habeas Corpus Decision

*Hemans v. Searls,* No. 18-CV-1154, (W.D.N.Y. Feb. 27, 2019)
*Medley v. Decker* No. 18-CV-7361 (S.D.N.Y. Dec. 11, 2019)
*Matos v. Barr,* 509 F.Supp.3d 3, 11 (W.D.N.Y. 2020)
*Ricardo Rodriques v. Merrick Garland* No. EDCV 23-0216-JPR, (2024), United
States District Court For The Central District of California.
*Hechavarria v. Sessions,* No.15-CV-1058, (W.D.N.Y. Nov. 2, 2018)
*Barrinton Walker v. Jeffrey Searls* No.23-CV-140-LJV (W.D.N.Y. April 23, 2024)
*Black v. Dir. thomas Decker, 103 F4th 133 92d Cir. 2024)*
*Quintanilla Mejia v. Barr* No.20-cv-6434-FPG (W.D.N.Y Oct. 7, 2020)

## INTRODUCTION

My name is Wardis Aguilar-Villalobos . Since I have entered the United States on or about 11/2006 then left briefly to El Salvador in 2012 came back the same year 2012, got detained by the Border patrol and was released by ICE on bond. I have been accorded the following immigration status: no legal status (in court proceedings since 2012, filed I-130 USCIS took almost 5 years to respond, and I was not able to make it for a personal interview because I was incarcerated USCIS abused of it is discretion by waiting almost 5 years without explanations).

I am currently being detained by the Department of Homeland Security ("DHS") at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York. I have been in immigration detention for approximately 29 months. I was served with a Notice to Appear ("NTA") on October 13, 2012 charging me with 212(a)(7)(A)(i)(I) of the INA. I was convicted of attempt to gun possession in 2022 (NY), and got sentenced to 30 months in jail, and I have a civil conviction in 2012, for ilegal entry that was a misdemeanor and got sentence to 10 days in jail, thats the only two convictions I have.

As such, I have been subject to mandatory immigration detention for approximately 29 months while my removal proceedings are pending in the 2nd circuit court of Appeal with a stay of removal GRANTED. Without intervention from this Court, my detention will continue, as my immigration case is ongoing and timely undetermined there is no indication as to when a decision will be issued and if the Second Circuit decides in Aguilar's favor He will not longer be under a final order of removal and immigration proceedings will re-opened and will

1

continue. Thus, even if petitioner is successful before the Second Circuit, his realese is not guaranteed, as the Government surely will seek to continue his detention during the removal proceedings. When a person has ongoing immigration proceedings, immigration detention without a bond hearing is considered unreasonably prolonged in violation of the Due Process Clause of the Fifth Amendment if such detention exceeds six months.

DHS has not yet conducted a bond hearing to determine whether my continued detention is justified. My immigration detention is unreasonably prolonged because I have been detained for more than six months without a bond hearing, and my detention will continue unless this Court grants me relief.

Once it is established that immigration detention is unreasonably prolonged, the burden shifts to the government to prove by clear and convincing evidence that my continued detention is warranted either because I am considered a danger to the community or I pose a flight risk.

Accordingly, I respectfully request that this Court issue a writ of habeas corpus and order the Respondent to release petitioner from their custody because the Respondent cannot establish by clear and convincing evidence that my continued detention is warranted, and continuing to detain me violates my constitutional due process rights under the Fifth Amendment. In the alternative, I respectfully request this Court order a bond hearing where the Respondent bears the burden to prove by clear and convincing evidence that my continued detention is necessary to prevent flight or danger to the community and that don't rely on my former gang (MS13) membership from six years ago, but to who I am now (former gang

2

member that has a job awaiting in a non profit organization Concil For Unity to works with youngs and help them to stay out of drugs and gang violence) and take in cosideration my 29 months in ICE custudy without incidents and also take in account that NY DOCCS had release me on parole because I was ready to re-integrate to the community, and did not possessed a risk to the community.

Petitioner stress on the fact that if this court order a bond hearing the immigration Judge that over see's petitioner case will deny his bond as he denied his case being a conflict of interest due to petitioner filing a complain on the IJ for being BIAS and the IJ will deny petioner bond over petitioner former gang membership. Petitioner is aware of all the pain the violent MS13 gang has inflicted in the community and knows that he made mistakes wich he regret. All I ask is that petitioner in a eventually bond hearing be treated as a single person/former gang member no like the whole gang.

An immigrtion Judge one-time finding that a detainee was a flight and danger risk does not prove that he will remain such a risk in the future IJ must also find that noless restrictive alternative to detention that could reasonably assure petitioners apperance and the safety of the community exist. *When DHS/ICE determined that the Respondent was a danger to the community. Preventive detention based upon dangerousness has traditionally been limited to especially dangerous individuals and requires "strong procedural protections", as it presents serious constitutional concerns the longer detention lasts. In the Zadvydas and Salerno, the Government failed to prove by clear and convincing evidence that an arrestee presented an identified and articulated threat to an individual or the community."*

*Here, DHS/ICE categorically failed to meet the clear and convincing standard. To prove*

*a fact by clear and convincing evidence, a party must submit evidence to "demonstrate that a factual contention is 'highly probable'. Under this standard, DHS is required to prove that it was highly probable that, if released, Respondent would engage in violence. "The mere conviction of a crime is not an adequate basis for findings that an individual is a threat to the community." In the Korkees and Patriarca cases the Judges found that: although in theory a Mafia Boss was an intimidating and highly dangerous character, the government had not demonstrated that this Boss posed a significant danger, or at least a danger that could not be overcome given appropriate conditions.*

*Past crimes are not basis for determining that the Respondent is a present danger. In the D'Alessando v. Mukasey, case the government was criticized where "DHS/ICE has simply taken petitioner's decades-old criminal conviction and concluded that the petitioner is a present danger to society."*

## PARTIES

Petitioner Wardis Aguilar-Villalobos is detained at Buffalo Federal Detention Facility. Respondent **Director Brophy** is sued in his official capacity as the Field Director of Buffalo U.S Immigration and Customs Enforcement, as well as **Director Harvey** in his official capacity as the Officer-in-Charge of the Buffalo Federal Detention Facility, at which Petitioner is currently detained.

## JURISDICTION AND VENUE

Jurisdiction is proper under the U.S. Constitution, *U.S. CONST. art. I § 9, cl. 2 ("Suspension Clause"), and federal statutes 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 2241 (habeas corpus); and 28 U.S.C. § 1651 (All Writs Act).*

Additionally, this Court has jurisdiction to grant injunctive relief pursuant to the Declaratory Judgment *Act, 28 U.S.C. § 2202.* Federal district courts have jurisdiction to hear habeas corpus claims by non citizens challenging their detention by DHS, *see Demore v. Kim, 538 U.S. 510, 516-17 (2003); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001).*

Furthermore, while *8 U.S.C. § 1226(e)* bars judicial review of the discretionary denial of bond, it does not bar constitutional challenges to the bond hearing process. *See, e.g., Medley v. Decker, No. 18-CV-7361 (AJN), 2019 WL 7374408, at*

*3 (S.D.N.Y. Dec. 11, 2019) (federal district courts have habeas jurisdiction to hear challenges to constitutional adequacy of bond hearing procedures); *see also Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011)* ("[C]laims that the [bond] process itself was constitutionally flawed are 'cognizable in federal court on habeas . . . .'") *(quoting Gutierrez–Chavez v. INS, 298 F.3d 824, 829 (9th Cir.2002)).*

Venue is proper in the U.S. District Court for the Western District of New York under *28 U.S.C. § 1391* because the Defendant is in this District; I am currently being detained within this District at the Buffalo Federal Detention Facility in Batavia, New York; and a substantial part of the events giving rise to the claims in this action took place in this District.

## STATUTORY FRAMEWORK

Congress has authorized DHS to mandatory detain non-citizens who are convicted of certain crimes without the opportunity for a bond hearing. *28 U.S.C. § 1226(c).* The statute itself is silent on whether DHS is authorized to detain such non citizens subject to mandatory detention for the entirety of their removal proceedings, regardless of how long such proceedings may take.

When a person has ongoing immigration proceedings, immigration detention without a bond hearing is considered unreasonably prolonged in violation of the Due Process Clause of the Fifth Amendment if such detention exceeds six months. *Matos v. Barr, 509 F.Supp.3d 3, 11 (W.D.N.Y. 2020).*

## STANDARD
## A. Writ of Habeas Corpus

Congress has also authorized federal district courts "to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties*{2020 U.S. Dist. LEXIS 14} of the United States,'" Wang v. Ashcroft, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3))*, including claims by non-citizens challenging their detention without bail. *Demore v. Kim, 538 U.S. 510, 516-17, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003)*.

## EXHAUSTION OF REMEDIES

There is no statutory exhaustion requirement for a petition challenging immigration detention. *See Araujo-Cortes v. Shanahan, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014)*. I am not required to exhaust administrative avenues to challenge my detention because the statutory authority subjects me to mandatory detention and, as such, does not provide me with any meaningful administrative options with which to challenge my detention. Se*e 8 U.S.C. § 1226(c); see also Cave v. East Meadow Union Free Sch. Dist., 514 F.3d 240, 249 (2d Cir. 2008)* ("The exhaustion requirement is excused when exhaustion would be futile because the administrative procedures do not provide an adequate remedy.") *(citing Honig v. Doe, 484 U.S. 305, 327 (1988))*.

Besides which, I have been denied a bond hearing by the IJ on 2019, 2 custody review and an ATD package presented to the DHS and ICE, outlining Alternative

8

to Detention which was denied by ICE; I was granted a "Stay of Removal" by the Second Circuit Court of Appeal and can't get no more custody reviews according to my Deportation Officer.

## LEGAL ARGUMENT

### Procedural Due Process Requires that I Be Released or, at Minimum, Afforded a Constitutionally Adequate Bond Hearing at Which the Government Must Justify My Continued Detention.

The U.S. Supreme Court's opinion in *Zadvydas v. Davis* stands for the proposition that "freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *533 U.S. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).*

The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person of liberty without due process of law." U.S. CONST. amend. V. Prolonged detention requires due process protections for individuals, even those whose "presence in this country is unlawful." *Plyler v. Doe, 457 U.S. 202, 210 (1982).* Thus, as the Court noted, "[a] statute permitting indefinite detention of [a non citizen] would raise a serious constitutional problem." Zadvydas, 533 at 690. By subjecting non-citizens like myself to mandatory immigration detention, *8 U.S.C. § 1226(c)* permits indefinite detention, thus raising the very serious constitutional problem that the Court had cautioned against in *Zadvydas*.

9

Although the Supreme Court ruled in Demore that mandatory detention pending removal proceedings is not unconstitutional per se, the Court left open the question of whether the duration of such mandatory detention is subject to constitutional constraints. Such constitutional constraints can be found in the Fifth Amendment of the U.S. Constitution, which, as the Court recognized in Demore, "entitles [non citizens] to due process of law in deportation proceedings." *538 U.S. at 523 (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)).*

While the Supreme Court held in court held in *Jennings v. Rodriguez, 583 U.S. 281, 138 S. Ct. 830, 200 L. Ed. 2d 122 (2018), that § 1226(c)* does not require bond hearings in prolonged detention cases as a matter of statutory construction, it did not express any views on whether the U.S. Constitution itself requires a bond hearing, leaving it to the lower courts to address the issue of what process is due when detention is unreasonably prolonged.

10

**My Detention Has Become Unreasonable Prolonged**

In the wake of Jennings, the Western District of New York ("WDNY") has developed a two-step inquiry for evaluating procedural due process challenges to prolonged immigration detention. *Hemans v. Searls, No. 18-CV-1154, 2019 WL 955353, at *5 (W.D.N.Y. Feb. 27, 2019).*

In the first step of the inquiry, the Court considers whether the detention has been unreasonably prolonged by weighing several distinct factors. Id. If the Court finds that the detention was unreasonably prolonged, it proceeds to step two of the inquiry, which involves identifying what process is due by considering the factors outlined in *Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Hemans, 2019 WL 955353, at *5., see also Hechavarria v. Sessions, No.15-CV-1058 (LJV), 2018 WL 5776421, at *7-9 (W.D.N.Y. Nov. 2, 2018), Carol William Black v. Thomas Decker, No.20-3224 (2024), Ricardo Rodriques v. Merrick Garland No. EDCV 23-0216-JPR, (2024).* If the government has failed to provide the detained person with the procedural safeguards dictated by the Mathews factors, then the detained person's continued detention violates procedural due process. *Hechavarria, 2018 WL 5776421 at *8-9.*

Numerous courts in this Circuit have concluded that aliens subject to mandatory detention under *8 U.S.C. § 1226(c)* are entitled to individualized determinations as to their risk of flight and dangerousness when their continued detention becomes unreasonable and unjustified." *Sophia v. Decker, No. 19 Civ. 9599, 2020 U.S. Dist. LEXIS 26110, 2020 WL 764279, at *3 (S.D.N.Y. Feb. 14, 2020) (quotation marks omitted) (citing cases).* Courts in this District consider a

11

number of factors in determining whether detention is unreasonable and *{2020 U.S. Dist. LEXIS 23}* thus a violation of due process.

To determine whether one's immigration detention is unreasonably prolonged, courts in this district have adopted the following multi-factor test articulated in *Cabral v. Decker:*

> **"(1).The length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention facility is meaningfully different from a penal institution for criminal detention; (5) the nature of the crimes committed by the petitioner; and (6) whether the petitioner's detention is near conclusion. 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018)".**

The first factor, the length of immigration detention, is the most important factor. *Ranchinskiy v. Barr, 422 F. Supp. 3d 789, 797 (W.D.N.Y. 2019) (quoting Bermudez Paiz v. Decker, No. 18-CV-4759 (GHW) (BCM), 2018 WL 6928794, at *13 (S.D.N.Y. Dec. 27, 2018)).*

Courts in the Second Circuit have "generally been skeptical of prolonged detention of removable immigrants, without process, lasting over six months," *Ranchinskiy, 422 F. Supp. 3d at 797 (quoting Lett v. Decker, 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018)).* Moreover, in Demore, the Supreme Court heavily relied on the average length of detention for people detained under § 1226 as support for its constitutionality, reasoning that a six-week detention was the average and that a

12

five-month detention counts as an outlier. *538 U.S. at 530.*

I have been detained since June 2, 2022, and have been detained for over 29 months. Since the length of my detention exceeds six months, and by the time this honorable court make a decision **my detention will surpass my criminal sentence of 30 months,** the first factor weighs in my favor when determining whether my detention has become unreasonably prolonged.

The second factor considered is the question of which party is responsible for the detention being unreasonably prolonged. Cabral, 331 F. Supp. 3d at 261. While a detained person who is found to be "abusing the processes provided to him" would bear the responsibility of their detention being prolonged, a detained person who "simply made use of the statutorily permitted appeals process" cannot be made responsible for his prolonged detention. *Hechavarria v. Sessions, 891 F. 3d 49, 56 n.6 (W.D.N.Y. 2018); see also Hechavarria, 2018 WL 5776421 at *7.*

An immigration judge ordered me deported on February 26, 2023. After being denied relief, I appealed my case to the Board of Immigration Appeals ("BIA") on March 13, 2023. My BIA appeal was denied on August 1st, 2024 and I appealed to the Second Circuit court of Appeal on August 10, 2024 and was granted "Stay of Removal" pending review which will know is timely undetermined. Hence, Factor two weighs in my favor as I have made use of the "statutorily permitted appeals process". Id.

Factor three weighs in my favor since I have asserted the following defense(s) to my removal: by filing an I-589 application for " Asylum, Withholding of Removal

13

and Convention Against Torture ( CAT). Which is currently under appeal at the Second Circuit Court of Appeal.

Factor four weighs in my favor because my detention at the BFDF is not meaningfully different from detention at a penal institution because it comprises many of the same restrictions that often accompany penal detention and incarceration, including restrictions on movement and expectations to follow orders of presiding facility officers. I am also lock in, in a cell for approximated 16 hours a day. *See Ranchinskiy, 422 F. Supp. 3d at 799* (finding, absent rebuttal from the government, that detention at the BFDF is akin to criminal incarceration); *Gonzales Garcia v. Barr, No. 6:19-CV-6327-EAW, 2020 WL 525377, at \*15 (W.D.N.Y. Feb. 3, 2020)* enforcement denied on other grounds sub nom. Gonzales.

We are being subjected to a strict locked down in a 2 man cell for 16 hours out of 24 hours every day this happen in three housing Units (A-1, A-2 and B-1). We are only allow 8 hours out while more than an hour out of that 8 hours is for meal time which can not be count as a meaningful recreation time.
*Garcia v. Rosen, 513 F. Supp. 3d 329 (W.D.N.Y. 2021)* ("[T]he reality is that the [BFDF] houses [non citizens] against their will with various restrictions on their freedom of movement. Thus, while perhaps not akin to a maximum-security prison . . . the facility does not seem meaningfully different from at least a medium-security penal institution for criminal detention.").

Factor five weighs in my favor I was covicted of attempt gun possesion a not deportable offence. I got sentence to 30 months in jail, and I been in immigration detention for 29 months is like serving time for the same conviction.

14

Since a majority of the factors in the multi-factor test weigh in my favor, particularly factor one pertaining to the excessive length of my detention, there is sufficient evidence to conclude that my detention is unreasonably prolonged.

Once the Court has found that detention is unreasonably prolonged, it moves to the second step of the two-step inquiry, which asks what specific due process rights should be afforded. *Hechavarria, 2018 WL 5776421 at \*7-9.*

**Because My Detention Has Been Unreasonably Prolonged and I Am Being Deprived of a Liberty Interest, Due Process Demands My Release or, at Minimum, That I Receive a Constitutionally Adequate Bond Hearing.**

Due process demands "adequate procedural protections" to ensure that the government's asserted justification for physical confinement "outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Zadvydas, 533 U.S. at 690 (quoting Kansas v. Hendricks, 521 U.S. 346, 356 (1997)).*

In Mathews v. Eldridge, the Supreme Court provided a three-factor test to weigh the constitutionality of administrative procedures: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *424 U.S. 319, 335 (1976).* Each of the Mathews factors weighs heavily in favor of release or, at minimum, requiring a constitutionally adequate bond hearing once detention

15

under *8 U.S.C. § 1226(c)* has become prolonged.

First, the importance and fundamental nature of an individual's liberty interest is well established. *See Zadvydas, 533 U.S. at 690 ("Freedom from imprisonment . . . lies at the heart of [] liberty . . . ."); cf. Hechavarria, 2018 WL 5776421 at *8* ("This Court finds little difference between Hechavarria's detention and other instances where the government seeks the civil detention of an individual to effectuate a regulatory purpose.").

In Black/GM the court explained that interest 1226(c) detained noncitizens hold "is the most significant liberty ineterest there is the interest in being free from imprisonment." *Black, 103 F.4th at 151 ( quoting Velasco LOpez v. Decker, 978 F.3d 842, 851 (2d Cir. 2020)*. The Court noted that noncitinzens detained under *8 U.S.C 1226(c)* possess the same liberty inerest as a noncitizents detained under any other statute. See id. And, it highlighted that 1226(c) detained noncitizens lack any admisnistrative mechanism by wich they could challenge their detention. Here because **Wardis Aguilar-villalobos** has been detained in civil immigration detention since June 2nd, 2022. **Wardis Aguilar-Villalobos**, too, possesses the same liberty interest as *Black and G.M.*

Here, the fundamental nature of freedom weighs in favor of my release. I completed my criminal sentence on June 2, 2022, and I have been detained by Respondent for over 29 months without any meaningful judicial review and the custody review ICE have conducted does not bear the burden of proof to keep with my detention, but even like that they have denied. ICE is saying that, I am a flight risk and danger to the community. I also filed an ATD (Alternative to Detention)

16

application and was denied without much explanation.

Second, the risk that my freedom will be erroneously deprived is significant. Crucially, I have no opportunity to challenge my detention because the statute mandates detention regardless of whether I am a flight risk or danger to the community. *See Jennings, 138 S. Ct. at 844* (discussing the use of "may [detain]" and "shall [detain]" in the context of *8 U.S.C. § 1226* and the requirement of detention when the statute uses "shall.").

In *Black v. Decker* the Second Circuit found that there is a high risk of erroneous deprivation of rights for 1226(c) detained noncitizens because there are "almost nonexistent procedural protections in place for section 1226(c) detainees Id. at 152. The court observed thet while 1226(c) detained noncitizens possess due process protections in other adjacent in covering over the deficient processes noncitizens posses for requesting their actual release. The Court thus concluded that 1226(c) detained noncitizens are faced with even higher "risk[s] of erroneous deprivation" of their private liberty ineterest than 1226(a) detained noncitizens . Here **Wardis Aguilar-Villalobos** has not received any mechanism that would ensure an impartial adjudication of his continued detention. Rather, the only review of **Wardis Aguilar-Villalobos** of continued detentions has been by ICE. There for **Wardis Aguilar-Villalobos** risk of erroneous deprivation is thus markedly high.

Furthermore, any internal process at DHS to determine whether release is warranted is not subject to review or challenge. Thus, there is a significant risk of erroneous, unwarranted detention, and the deprivation of my liberty interests.

17

See e.g., *Hechavarria, 2018 WL 5776421, at \*8* ("[G]iven that the statute precludes any pre- or post-deprivation procedure to challenge the government's assumption that an immigrant is a danger to the community or a flight risk, it presents a
significant risk of erroneously depriving [Petitioner] of life and liberty interests.");
*see also Chi Thon Ngo, 192 F.3d 390, 398-99 (3d Cir. 1999)* ("To presume dangerousness to the community and risk of flight based solely on his past record does not satisfy due process. . . .   Presenting danger to the community at one point by committing crime does not place [a petitioner] forever beyond redemption.").

   I am not a fly risk as I have no where to fly to. I am seeking for a relief to stay in this country by filing for an I-589 application for Asylum, withholding of Removal and Convention against Torture, and I know that any violation of law either criminal or immigration will land me back in detention. I do not have any prior criminal conviction apart from the one time I was convicted of a non violent crime in NY attemp to gun possession, and a civil federal charge for elegal entry which I got sentence to 10 days in jail in 2012, and I have never had any disciplinary issues during my incarceration and have taking several life changing program during incarceration at Riverhead County Jail (Suffolk County NY) as well as the immigration Detention center where I have been detained. I am a father of a U.S. citizen child and I have a steady job awaiting for me ( At Counsel For Unity a non-profit organization sharing my story as a former gang member to help young's to stay away from the gang life). I have a steady resident where I will be living when I am out of here with my son mother who is a U.S. citizen.

Finally, the procedure I propose—namely, requiring that the DHS prove to this court or, in the alternative, an immigration judge, that my continued detention is justified—does not meaningfully prejudice the government's interest in detaining dangerous non citizens during removal proceedings. Instead, it serves just that purpose. *See e.g., Hechavarria, 2018 WL 5776421 at \*8* ("The government . . . contends that it has a regulatory interest in [petitioner's] detention pending removal based on his serious criminal history and risk of flight.
This Court agrees that both of these interests may well be 'legitimate and compelling.' But those are the very interests that would be addressed at a detention hearing. So the government's continued assertion that [the petitioner] must be detained because he is dangerous simply begs the question and suggests exactly why a hearing is necessary.") (internal citations omitted).

The Second Circuit in *Black v. Decker* determined that the competing goverment interest in preventing a 1226(c) detained noncitizen from receiving a bond hearing is minimal. The court outlined that government possesses two primary interest in denying mandatorily-detained noncitizen from receiving a bond hearing at this stage: ensuring the noncitizen's apperance at procceedings and protecting the comummunity from danger. *See id. at 153-54*. The Court, however indicated these interest are not under cut by the relief Mathews provides in a procedural sense. It assessed "at any ordered bond hearing, the IJ would assess on an individualized bassis whether the noncitizens present a flight risk or danger to the community, as IJ's routinelu do for other noncitizen's detainees." Id. since the procedural protection that flows out of the firdt two *Mathews* factors does not overburden the goverment's interest at the third factor, the Court found relief reasonable and necessary.

19

As the Second Circuit articulated in Velasco Lopez v. Decker, No. 19-2284-cv (2020), once detention has become prolonged, it is in everyone's—the petitioner, the Government, and the public's—interest for the petitioner to receive a constitutionally adequate custody re-determination hearing. See 978 F.3d 842, 857 (2d Cir. 2020) ("The irony in this case is that, in the end, all interested parties prevailed.

The Government has prevailed because it has no interest in the continued incarceration of an individual who it cannot show to be either a flight risk or a danger to his community. [The petitioner] has prevailed because he is no longer incarcerated. And the public's interest in seeing that individuals who need not be jailed are not incarcerated has been vindicated.").

In the immigration context, the only two valid justifications for detention are to mitigate the risks of danger to the community and to prevent flight. *See Demore, 538 U.S. at 531 (Kennedy, J., concurring)* ("[T]he justification for 8 U.S.C. § 1226(c) is based upon the government's concerns over the risk of flight and danger to the community").

Given the gravity of the liberty deprivation when the government detains individuals, due process requires that the government bear the burden of proof by clear and convincing evidence for detaining an individual, particularly after that detention has become prolonged. *Cf. Velasco Lopez v. Decker, 978 F.3d 842, 856 (2d Cir. 2020). (stating, for an 8 U.S.C. § 1226(a)* prolonged detention claim, "it is in improper to allocate the risk of error evenly between the individual and the Government when the potential injury is as significant as the individual's liberty.

20

Accordingly, we conclude that a clear and convincing evidence standard of proof provides the appropriate level of procedural protection."). Consistent with these principles, the WDNY has found that, where a particular detained person's mandatory detention becomes unreasonably prolonged, due process requires the government to show, by clear and convincing evidence, that continued detention is necessary because that detained person is a flight risk or is dangerous. Jules v. Garland, *No. 21-CV-6342 CJS, 2021 WL 4973081, at \*7 (W.D.N.Y. Oct. 26, 2021); see also Campbell v. Barr, 387 F. Supp. 3d 286, 300 (W.D.N.Y. 2019).* ("To sustain the prolonged detention of [a non citizen] subject to removal proceedings based on its general interests in immigration detention, the government is required, in a full-blown adversary hearing, to convince a neutral decision maker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person, or ensure that the [non citizen] will appear for any future proceeding. This requires consideration of less restrictive alternatives to detention.") (internal citations and quotation marks omitted);

Ranchinskiy, *422 F. Supp. 3d at 800* ("Both due process and BIA precedent require the IJ to consider ability to pay and alternative conditions of release in setting bond.").

21

# CLAIM FOR RELIEF

## COUNT ONE:

## MY ONGOING DETENTION VIOLATES THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT

I re allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

Detained people who have been mandatory detained in immigration detention for an unreasonably prolonged period must be released absent clear and convincing evidence that the detained person is dangerous or a flight risk, and that no conditions of release can reasonably mitigate that danger or flight risk.

For these reasons, my continued detention without, at minimum, a constitutionally adequate hearing violates due process.

22

# PRAYER FOR RELIEF

**WHEREFORE,** I respectfully pray that this Court:

i) Assume jurisdiction over this matter;

ii) Grant a Writ of Habeas Corpus directing the Respondent to release me from further unlawful
detention with reasonable terms of supervised release;

iii) Enter preliminary and permanent injunctive relief enjoining Respondent from unlawfully detaining me any further;

iv) Order the Respondent not to transfer petitioner outside the Western District of New York during the pendent of this petition;

v) In the alternative, issue a conditional writ of habeas corpus requiring Respondent to provide me with an individualized bond hearing before a neutral arbiter at which Respondent must bear the burden of establishing by clear and convincing evidence that my continued detention is justified without using my past record of gang affiliation and conviction of 5 years ago, "The mere conviction of a crime is not an adequate basis for findings that an individual is a threat to the community." In the *Korkees* and *Patriarca* cases the Judges found that: although in theory a Mafia Boss was an intimidating and highly dangerous character, the government had not demonstrated that *this Boss* posed a significant danger, or at least a danger that could not be overcome given appropriate conditions.
Past crimes are not basis for determining that the Respondent is a present danger. In the

23

*D'Alessando v. Mukasey*, case the government was criticized where "DHS/ICE has simply taken petitioner's decades-old criminal conviction and concluded that the petitioner is a present danger to society."

vi) Order that in considering my detention, the Court should require respondents must consider alternatives to detention and my ability to pay when setting a monetary bond;

vii) Grant such further relief as the Court deems just and proper.

I affirm, under penalty of perjury, that I am the petitioner, I have read this petition and the information in this petition is true and correct.

Respectfully Submitted,

Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, New York 14020

DATED: 11/13/2024
Batavia, NY

24

## CERTIFICATE OF SERVICE

I, hereby certify that on November 13, 2024. I caused to be served a true copy of the
**PETITIONER HABEAS CORPUS.**

One copy of the above documents was addressed and mailed to:

X  By sending via USPS First Class mail to:

**United States District Court for**
**The Western District of New York**
**2120 Kenneth B. Keating Federal Building**
**100 State Street**
**Rochester, New York 14614**


**Field Officer Director for Buffalo area**
**Thomas Brophy**

**Deputy Field Office Director of Buffalo**
**Federal Detention Facility**
**Jeffrey Searls**
**4250 Federal Drive, Batavia NY 14020**


**I certify under the penalty of perjury that the foregoing is true and correct pursuant**
**to 28 U.S.C. § 1746.**

*Aaron A. Stahl*
11/13/24

Respectfully submitted,

/s/ _____

**Batavia, NY  14020**
**11/13/2024**

Aaron A. Stahl
Notary Public, State of New York
Reg. No. 01ST0013537
Qualified in Orleans County
Commission Expires September 14, 2027